IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Patrick R. Bryant,                          )       Case No. 8:13-cv-316-RMG-JDA
                                            )
                                            )
        Petitioner,                         )
                                            )
        v.                                  )       **REPORT AND RECOMMENDATION**
                                            )            **OF MAGISTRATE JUDGE**
Larry Cartledge,                            )
Warden, Perry Correctional Institution,     )
                                            )
        Respondent.                         )
_____)

        This matter is before the Court on Respondent's motion for summary judgment
[Doc. 16]. Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28
U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule
73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for
relief and submit findings and recommendations to the District Court.

        Petitioner filed this Petition for writ of habeas corpus on February 2, 2013.[1] [Doc.
1.] On May 6, 2013, Respondent filed a motion for summary judgment and a return and
memorandum. [Docs. 15, 16.] On May 7, 2013, the Court issued an Order in accordance
with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the
summary judgment/dismissal procedure and of the possible consequences if he failed to
adequately respond to the motion. [Doc. 17.] On June 12, 2013, Petitioner filed a response
in opposition to Respondent's motion. [Doc. 19.] Accordingly, the motion is ripe for review.

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for
forwarding to the court. See Houston v. Lack, 487 U.S. 266, 270 (1988). Therefore, this action was filed on
February 2, 2013. [Doc. 1-2 (envelope stamped by correctional institution on February 2, 2013).]

## BACKGROUND

Petitioner is presently confined and serving a life sentence without parole at Perry Correctional Institution ("Perry"). [Doc. 1 at 1.] In July 2007, Petitioner was indicted for criminal sexual conduct with a minor, second degree. [Doc. 15-24 at 1.] On July 26, 2007, after a trial in which Petitioner was represented by J. Eric Fox ("Fox"), a jury found Petitioner guilty of the charge.[2] [*See id.* at 2.] Judge J. Michael Baxley sentenced Petitioner to life in prison without parole pursuant to S.C. Code Ann. § 17-25-45.[3]

**Direct Appeal**

Petitioner timely filed a notice of appeal. [Doc. 14-2.] On March 2, 2009, Kathrine H. Hudgins of the South Carolina Commission on Indigent Defense filed a brief on Petitioner's behalf raising the following issues:

> 1. Did the judge err in allowing the state to question appellant, over objection, about details of a prior conviction for criminal domestic violence of a high and aggravated nature?
>
> 2. Did the judge err in admitting in evidence, over objection, appellant's indictment for criminal domestic violence of a high and aggravated nature when the appellant was on trial for criminal sexual conduct first degree and criminal sexual conduct with a minor second degree?

[App. 576.] On January 21, 2010, the South Carolina Court of Appeals issued an unpublished opinion affirming Petitioner's conviction. [*Id.* at 583–84.] Petitioner did not request rehearing or file a writ of certiorari. The Clerk of Court issued a remittitur on February 8, 2010. [*Id.* at 585.]

---

[2] Petitioner was found not guilty of first degree criminal sexual conduct, with which he had been charged in a separate indictment.

[3] The predicate "most serious offense" for Petitioner's life without parole sentence under the statute was a prior armed robbery conviction. [App. 558–569.]

2

## PCR Proceedings

*First PCR Proceeding*

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on May 4, 2010.   [App. 586–591.]  Petitioner raised the following grounds for relief:

> Issue (A) Was counsel ineffective for failing to object to the testimony of the State's witness, Crystal Smith?
>
> Issue (B) Was counsel ineffective for failing to investigate and object to improper and inflammatory testimony (from Crystal Smith, the victim of Petitioner's previous criminal domestic violence of an aggravated nature ("CDVAN") conviction)?
>
> Issue (C) Did counsel have a conflict of interest and was he therefore ineffective because counsel represented Petitioner in his 2005 CDVAN case and Petitioner claimed he was later afforded post-trial relief for ineffective assistance of counsel in that case?
>
> Issue (D) Was counsel ineffective for failing to object to Petitioner's indictment which was obtained through prosecutorial misconduct and perjury because there was in fact no general sessions court held on the date of the indictment?

[App. 594–99.]

A hearing was held on the PCR application on November 16, 2010, where Petitioner was represented by attorney Paul Archer.  [App. 610–654.]  Testimony was received from Petitioner and from Fox.  [App. at 611.]  On December 2, 2010, the PCR court filed an order denying and dismissing the application with prejudice.  [App. at 655–62.]  After examining each of Petitioner's claims, the PCR court's order concluded that the Petitioner "failed to meet his burden of proof as to any of his allegations.  The [Petitioner] failed to prove that counsel's performance fell below the standard of reasonable professional norms, and the [Petitioner] did not show prejudice as to the outcome."  [App. at 661.]

3

A notice of appeal was timely filed and served. [Doc. 15 at 4.] On June 21, 2010, Tristan M. Shaffer of the South Carolina Commission on Indigent Defense filed a *Johnson* petition for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court, seeking review of the PCR court's decision and raising the following issue:

> In a criminal sexual conduct with a minor prosecution, when the jury found Petitioner not guilty of criminal sexual conduct in the first degree, was it proper for the trial court to find that Petitioner's admitted sexual contact with the fifteen year old prosecutrix was non-consensual for the purposes of the recidivist statute?

[Doc. 15-15.] Shaffer also requested to be relieved as counsel pursuant to *Johnson v. State*, 294 S.E.3d 201 (1988), representing to the court that he found Petitioner's appeal to be without merit. [*Id.* at 11.] Petitioner also filed his own pro se petition, alleging again that Fox was ineffective because he failed to properly investigate and object to Crystal Smith's testimony, that Fox had a conflict of interest because he represented Petitioner in a previous case, and that Fox was ineffective because he allowed the prosecution to proceed with a fraudulent indictment. [Doc. 15-6.] On August 23, 2012, the South Carolina Supreme Court denied the petition for writ of certiorari and relieved Shaffer as counsel. [Doc. 15-7.] Remittitur was issued on September 11, 2012. [Doc. 15-8.]

*Second PCR Proceeding*

Petitioner filed a second pro se PCR application on July 12, 2011. [Doc. 15-9.] In this application, he asserted his conviction was improper because he was not indicted by the grand jury (because the grand jury's schedule reflects that the grand jury did not convene on the date the indictment was signed) and his PCR counsel was ineffective for failing to bring this matter to the attention of the court. [Doc. 15-9 at 3.] The State filed a

4

return and motion to dismiss on August 10, 2011, arguing that the application was procedurally barred because it was a successive petition. [Doc. 15-11 at 2.] The State argued that Petitioner's grand jury issue could have been raised in his previous petition and asserted that his claim was barred by the one year-statute of limitations pursuant to S.C. Code Ann. § 17-27-45(a). [*Id*. at 3.] Additionally, counsel for the State contended that a PCR application was not the proper avenue for bringing an ineffective assistance of counsel claim, as PCR proceedings are used to raise constitutional violations about the conviction. [*Id.*]

In a conditional order of dismissal, the PCR court determined that the application was procedurally barred because it was "impermissibly successive" to the first petition and the Petitioner could have raised the grand jury issue in his first petition. [Doc. 15-12 at 2–3.] Regardless, the PCR court still considered the substance of Plaintiff's claims. The court found the claim to be without merit because the South Carolina Supreme Court authorizes the administrative judge of each judicial circuit to convene the grand jury when necessary (outside dates set by the Supreme Court) as required in the public interest. [*Id.* at 3.] The PCR court concluded that Petitioner's claim of ineffective assistance of PCR counsel was also without merit because (1) the grand jury claim that Petitioner wanted raised was in fact without merit, (2) PCR applications are to raise constitutional violations as to the petitioner's conviction, not other post-conviction proceedings, and (3) ineffective assistance of PCR counsel is not a recognized claim in South Carolina absent a claim of failure to file an appeal from the PCR. [*Id.* at 4.] Petitioner was granted twenty days from the date of the order to show why the conditional dismissal should not become final. [*Id.* at 5.]

In his response to the court's conditional dismissal, Petitioner argued that his grand jury claim did have merit because "it is clear from the court term calendar of July 2007 that no grand jury convened on July 18, 2007 (see court term calendar attached)." [Doc. 15-13 at 1.] Although he admitted that he did not file his application within the statute of limitations, he contended that the calendar showing the lack of a grand jury on that date was newly discovered evidence entitling him to tolling. [*Id.* at 2.]   The PCR court entered final dismissal on August 15, 2012, finding that Petitioner's grand jury calendar did not constitute new evidence, as he could have learned of the claim using reasonable diligence before his first PCR. [Doc. 15-14 at 2.] Moreover, the PCR court reiterated that it found the claim to be without merit, because Petitioner set forth no evidence to cause the court to doubt the authenticity of the grand jury indictment. [*Id.*] The court explained that terms of court listings issued by the South Carolina Court Administration, as shown by Petitioner's document, did not include information about grand juries because those meetings are handled at the county level.  [*Id.*]   The application was dismissed with prejudice. [*Id.*]

Petitioner filed a timely notice of appeal of the PCR court's decision. [Doc. 15-15.] On October 23, 2012, the South Carolina Supreme Court issued a letter to Petitioner requiring him to explain, pursuant to Rule 243(c) of the South Carolina Appellate Court Rules, why the lower court's finding that his petition was time barred and successive was improper. [Doc. 15-16.] Petitioner did so, again raising his grand jury argument. [Doc. 15-17.] The South Carolina Supreme Court summarily dismissed the appeal, finding that Petitioner failed to make his showing under Rule 243(c). [Doc. 15-18.]  Remittur issued on December 31, 2012.  [Doc. 15-19.]

6

**Petition for Writ of Habeas Corpus**

As stated, Petitioner filed this Petition for writ of habeas corpus on February 2, 2013, pursuant to 28 U.S.C. § 2254. [Doc. 1.] Petitioner asserts the following grounds for relief, quoted substantially verbatim:

| | |
|---|---|
| **Ground One**: | The [P]etitioner's conviction is in violation of the U.S. Const. and laws and treaties of U.S. |
| *Supporting Facts:* | Respondents violated the [P]etitioner's 4, 5, 6 and 14th Amendment of U.S. Const. |
| **Ground Two**: | The Court lacked subject matter jurisdiction over the [P]etitioner in this matter. |
| *Supporting Facts:* | Was not indicted by a legal grand jury. |
| **Ground Three**: | The PCR judge went contrary to the U.S. Supreme Court precedent and applied a legal context that should not apply and his decision was objectively unreasonable. |
| *Supporting Facts:* | See PCR order attached/PCR attorney ineffective/ *Martinez v. Ryan*, 132 S.Ct. 1309. |
| **Ground Four**: | The S.C. Supreme Court made an unreasonable application of the U.S. Supreme Court precedent. |
| *Supporting Facts:* | See Supreme Court's Order. |

[Doc. 1.] Under the section of the Petition in which the Petitioner was to explain the timeliness of his Petition, he stated "ineffective of appellate counsel and ineffective of trial counsel, *Martinez v. Ryan* 132 S.Ct. 1309." [*Id.*]

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S.

7

519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

8

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

9

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court

10

factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### Exhaustion

Section 2254 contains the requirement of exhausting state court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)    (i) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

11

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for post-conviction relief ("PCR"). State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court.  *Marlar*

12

*v. State*, 653 S.E.2d 266 (S.C. 2007).[4]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.[5]

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

[5]In *State v. McKennedy*, the South Carolina Supreme Court reiterated that a petition for discretionary review to the South Carolina Supreme Court in criminal and post-conviction cases is outside South Carolina's standard review process, and therefore, "petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies."  559 S.E.2d 850, 854 (S.C. 2002) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3) & 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and

14

> while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Sykes*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure or where a "fundamental miscarriage of justice" has occurred. *Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failing to raise the claim, the petitioner may show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*,

16

523 U.S. 614, 623 (1998).  To demonstrate this actual innocence standard, the petitioner's case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

**DISCUSSION**

**Ground One**

As an initial matter, Respondent argues that Petitioner's allegations are impermissibly vague and conclusory and should be dismissed on that basis.  Typically, to state a claim upon which relief can be granted in a civil case, the plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Mayle v. Felix*, 545 U.S. 644, 649 (2005).  In habeas proceedings, however, more is required.  The petitioner must "specify all the grounds for relief available to [him] and "state the facts supporting each ground."  *Mayle*, 545 U.S. at 649 (quoting Rule 2(c) of the Rules Governing Habeas Corpus Cases).  Notice pleading is therefore not sufficient for a habeas petition; the petition must be "plead[ed] with particularity."  *Id.* Petitioner has failed to meet this standard in any of his grounds for relief.  Particularly in his first ground, he states that his conviction is in violation of the US Constitution.  As supporting facts, he writes that Respondents violated his 4[th], 5[th], 6th and 14th Amendment rights.  Petitioner alleges that he raised this claim in his second PCR application and gives no further facts to support his claim.

Petitioner has failed to state a claim in Ground One.  Respondents are not required to guess as to the basis of Petitioner's constitutional claim.  Courts may summarily dismiss conclusory allegations in a habeas petition. *See generally, Blackledge v. Allison,* 431 U.S. 63, 74 (1977) (conclusory allegations unsupported by specifics are subject to summary

dismissal); *Porter v. United States*, 5:07-HC-2093-BO, 2008 WL 5636335 (E.D.N.C. Mar. 5, 2008).  Moreover, the only allegations Petitioner raised in his second PCR application were that his conviction was improper because he was not indicted by the grand jury (because the grand jury's schedule reflects that the grand jury did not convene on the date the indictment was signed) and his PCR counsel was ineffective for failing to bring this matter to the attention of the court.  To the extent that Plaintiff attempts to raise these allegations in Ground One, they have been addressed below in subsequent grounds. Therefore, the Court finds that Ground One should be dismissed for failure to state a claim.

**Ground Two**

Petitioner's second ground is that the court lacked subject matter jurisdiction over him because he was not indicted by a legal grand jury.  This ground could also be dismissed for failure to state a claim, because Petitioner has failed to articulate any particular facts about the grand jury proceedings to give rise to a claim for a constitutional violation.  However, in very liberally construing his Petition by considering the more detailed facts that he raised in his PCR application, the Court finds that Petitioner arguably raised this ground in his initial PCR application when he argued that his counsel was ineffective for failing to timely object to the indictment, which he alleges was obtained through perjury and prosecutorial misconduct.  However, in the PCR evidentiary hearing, the PCR court determined that "nothing was presented" on that issue and it was therefore waived. [App. 653.]  Moreover, in the PCR court's Order denying the application, Judge John noted that "[i]n his PCR Application, the Applicant alleged that his indictments were obtained through perjury and prosecutorial misconduct.  This Court finds that no evidence was presented in

support of these allegations at the PCR hearing.  Accordingly, such allegations were waived and are hereby denied and dismissed." [App. 660.]

In his second PCR application, which Judge John found to be successive and time barred, Judge John still examined Petitioner's claim that his grand jury indictment was fraudulent or otherwise insufficient.

> The Applicant could have raised allegation #1, the grand jury issue, in his previous PCR case.  *See Land v. State*, 274 S.C. 243, 262 S.E.2d 735 (1980); *Aice v. State*, *supra*.  In any event, the Applicant's allegation that he was not indicted by the grand jury is without merit.  Initially, this Court notes that the Applicant admits in his pleadings that he was indicted in July 2007. See Applicant's "Post Conviction Relief Brief," page 1.  In addition, his indictment, number 2007-GS-22-667, is stamped "True Bill" and was signed by Georgetown County Grand Jury foreman on July 18, 2007.  "Absent evidence to the contrary, . . . the regularity and legality of proceedings before a grand jury is presumed."  State v. James, 321 S.C. 75, 472 S.E. 2d 48, 40 (Ct. App. 1996).  Whether the "grand jury schedule" referenced by the Applicant (but not attached to his PCR Application) indicates that the grand jury met on July 18, 2007 is not conclusive because orders issued each year by the Chief Justice of the South Carolina Supreme Court grant the chief administrative judge of each judicial circuit the authority to, after consultation with the solicitor, schedule particular terms for the grand jury every six months *and* to convene the grand jury at other times during the six-month period as the public interest may necessitate.  Accordingly, unless, in response to this Conditional Order of Dismissal, the Applicant sets forth compelling reasons and/or evidence suggesting that there is reason to doubt the authenticity of the "true bill" and signature of the grand jury foreman on his indictment, this Court will conclude in a Final Order of Dismissal that the Applicant's allegation that he was not indicted by the grand jury is without merit as a matter of law.

[Doc. 15-12 at 3–4.]   In the final Order of dismissal, Judge John examined a document that Petitioner attached to his response to the conditional Order, which was a printout of the South Carolina Court Administration reflecting the terms of court in the Fifteenth Circuit for July 2007. [Doc. 15-14 at 1.]   Upon that analysis, the court found

...that Applicant's reasons are not sufficient to show why the Conditional Order of Dismissal should not become final. First, his claim regarding the grand jury cannot qualify as "newly-discovered evidence" because regardless of the date the Applicant actually learned of this claim, he could have, using reasonable diligence, discovered this claim during or before his last PCR. See S.C. Code Ann. § 17-27-45 ("If the applicant contends that there is evidence of material facts not previously presented and heard that requires vacation of the conviction or sentence, the application must be filed under this chapter within one year after the date of actual discovery of the facts by the applicant *or after the date when the facts could have been ascertained by the exercise of reasonable diligence*.") (emphasis added)

In any event, page 3 of the Conditional Order of Dismissal explains why this claim is without merit, and this Court finds that the Applicant failed to set forth any sufficient reasons and/or evidence suggesting any reason to doubt the authenticity of the "true bill" and signature of the grand jury foreman on his indictment. It is common knowledge amongst legal professionals in South Carolina that the "terms of court" listings issued by the South Carolina Court Administration do not include information about grand jury meetings since grand jury meetings are handled at the county level. Therefore, the fact that the "term of court" printout does not list a grand jury meeting on the date of the Applicant's indictment does not in any way indicate that there was, in fact, no grand jury meeting.

[*Id.* at 2.]

"It is black letter law that a federal court may grant habeas relief 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998) (quoting 28 U.S.C. § 2245(a)). In *Wright*, the petitioner raised a jurisdictional claim in his habeas petition, arguing that the state lacked jurisdiction over two of the counts against him because the proper procedure was not followed in transferring the counts from juvenile to circuit court. *Id.* "Because [petitioner's] claim, when pared down to its core, rests solely upon an interpretation of [state] case law and statutes, it is simply not cognizable on federal habeas review. *Id.* (citing *Smith v. Moore*, 137 F.3d 808, 822 (4th Cir. 1998)). The Fourth Circuit

determined that Wright raised his jurisdictional claim on state habeas review, and the Virginia Supreme Court interpreted its own laws and determined that the courts did have jurisdiction over Wright. *Id.* at 158. Therefore, "the Virginia circuit court had jurisdiction over Wright as a matter of law." *Id.* The same analysis applies here. Ground Two of the petition raises a jurisdictional argument that proper state procedure was not followed. This claim is a purely state law claim, just as in *Wright*. Moreover, though time and procedurally barred, Judge John in the South Carolina court substantively considered this issue and dismissed it as "without merit." The South Carolina Supreme Court, in interpreting its own laws, declined to grant certiorari. [Doc. 15-18.] Therefore, as in *Wright*, the South Carolina circuit court had jurisdiction over Petitioner as a matter of law. Summary judgment on Ground Two is appropriate.

**Ground Three**

Ground Three is also deficient of any factual specificity. Petitioner appears to argue that the PCR court misapplied United States Supreme Court precedent, that his PCR counsel was ineffective and that the Supreme Court's decision in *Martinez v. Ryan* applies to his case. Though the ground should arguably be dismissed for failure to state a claim, in an abundance of caution the Court has construed the claim as one for ineffective assistance of counsel and the PCR court's failure to find that counsel was ineffective.

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme

Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart*

*v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see also Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland*—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.   This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[6]   *Richter*, 131 S. Ct. at 785.  "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."   *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas").   Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."   *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists

---

[6]In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. 668, 687 (1984).  To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 692.  The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. In his PCR petition, Petitioner argued his trial counsel was ineffective for failing to do more to show Petitioner was not aware of the victim's age, for failing to call witnesses to show that the victim frequented a night club, and that counsel should have objected to the testimony of Crystal Smith, Petitioner's former girlfriend. The Court finds that the PCR court adequately addressed all these issues within the parameters of Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. The PCR court heard testimony from both Petitioner and his trial counsel and "found [Petitioner's] testimony to be lacking in credibility with respect to his description of his beliefs regarding the victim's age. This Court found Mr. Fox's testimony to be highly credible in all respects." [App. 657.] The PCR court found that trial counsel's strategic decisions about which witnesses to call at trial were reasonable. [Id. at 658.] Judge John concluded that counsel argued vigorously to exclude the testimony of Ms. Smith, both before and during trial. [*Id.* at 659.] The PCR court found that Petitioner's allegation of a conflict of interest with his trial counsel was also without merit. Therefore, the court concluded, the Petitioner "failed to meet his burden of proof as to any of his allegations. The [Petitioner] failed to prove that counsel's performance fell below the standard of

24

reasonable professional norms, and the [Petitioner] did not show prejudice as to the outcome." [*Id.* at 661.] Having considered and applied the appropriate law, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Petitioner also attempts to state a claim pursuant to *Martinez v. Ryan*, --- U.S. ---, 132 S. Ct. 1309 (2012). In *Martinez*, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S. Ct. at 1315. The Court elaborated,

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318. Accordingly, Petitioner may establish cause for a default if he demonstrates his PCR counsel was ineffective and that the underlying ineffective assistance of trial counsel claim is a substantial one, i.e., it has some merit.

First, the only arguably defaulted issue is the grand jury indictment, which was dismissed in the first PCR proceeding because no evidence was presented. Therefore, Petitioner must show that PCR counsel was ineffective for failing to present evidence on the

issue and that the claim that trial counsel was ineffective for failing to address the issue at trial was not procedurally defaulted. As stated, the Supreme Court established in *Strickland* that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation—that is, "counsel's representation fell below an objective standard of reasonableness"—and (2) the prisoner was prejudiced as a result. 466 U.S. at 687–88. Petitioner has failed to demonstrate—or even argue—that his PCR counsel's representation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."). The record demonstrates that PCR counsel vigorously argued Petitioner's case at the PCR hearing and strategically focused on the meritorious issues.

Moreover, as discussed above, Petitioner's underlying ineffective assistance claim is not sustainable. *See Martinez*, 132 S. Ct. at 1318 ("[A] prisoner may establish cause for a default of an ineffective-assistance claim . . . where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the

standards of *Strickland*.").  To the extent that the Court construes Petitioner's response as arguing that PCR counsel was ineffective for failing to raise the grand jury issue in the evidentiary hearing, this is unpersuasive.  Although the PCR court found Petitioner's second petition to be successive, it still considered that claim on the merits.  This Court has considered both Petitioner's ineffective assistance claim and the grand jury claim on the merits.  Therefore, Petitioner cannot show that he has been prejudiced by the default.  Accordingly, Respondent's motion for summary judgment should be granted as to Ground Three.

**Ground Four**

As stated in his Petition, Ground Four simply states that the South Carolina Supreme Court made an unreasonable application of U.S. Supreme Court Precedent. [Doc. 1 at 9.] This ground is vague and conclusory, and Petitioner fails to include any supporting facts. As such, it is subject to dismissal for failure to state a claim.  In construing Petitioner's response liberally, Ground Four appears to be that the South Carolina Supreme Court violated his constitutional rights because they did not consider his PCR petition on the merits, but instead dismissed his claim under Rule 243(c) of the South Carolina Appellate Court Rules. [Doc. 19 at 2.]   Rule 243 requires

> (c) Explanation Required.  If the lower court has determined that the post-conviction relief action is barred as successive or being untimely under the statute of limitations, the petitioner must, at the time the notice of appeal is filed, provide an explanation as to why this determination was improper. This explanation must contain sufficient facts, argument and citation to legal authority to show that there is an arguable basis for asserting that the determination by the lower court was improper.  If the petitioner fails to make a sufficient showing, the notice of appeal may be dismissed.

Rule 243(c), SCACR.  Here, the South Carolina Supreme Court denied certiorari because it determined that Petitioner "failed to show that there [was] an arguable basis for asserting that the determination by the lower court was improper." [Doc. 15-18.] The South Carolina Supreme Court did not apply Supreme Court precedent in making its determination, nor was it required to do so.  Moreover, the Supreme Court's denial of certiorari did not preclude Petitioner from seeking federal habeas review and having his claims heard on the merits, as they have been above.  *See Ellison v. State*, 676 S.E.2d 671, 672 (S.C. 2009). Therefore, the Court finds that Petitioner has failed to state a claim that the South Carolina Supreme Court violated his federal constitutional rights and summary judgment is appropriate on this claim.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends Respondent's motion for summary judgment [Doc. 15] be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.


s/Jacquelyn D. Austin
United States Magistrate Judge


December 3, 2013
Greenville, South Carolina